

**SIGNED this 20th day of October, 2012.**

_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court

Western District of Texas
San Antonio Division

| | |
|---|---|
| *In re* | BANKR. CASE NO. |
| STEPHEN W. BOYD | 11-51797 |
| *Debtor* | |
| JOSE C. RODRIGUEZ, TRUSTEE<br><br>    *Plaintiff,*<br>v.<br><br>FOUR DOMINION DRIVE, LLC<br><br>    *Defendant.* | ADV. NO. 12-05107 |

**MEMORANDUM DECISION DENYING MOTION TO DISMISS IN PART AND GRANTING
MOTION TO DISMISS IN PART**

The Defendant, Four Dominion Drive, LLC ("FDD"), seeks to dismiss this adversary complaint pursuant to Rules 12(b)(1) & 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy. The Complaint, filed on August 10, 2012, objects to the Claim of FDD and

1

seeks to avoid and/or void the assignment of debt from The Law Office of Stephen W. Boyd & Associates, PLLC ("the Law Firm") to FDD.

## I.     *The Complaint*

The underlying relevant alleged facts are as follows:

The Debtor, Stephen W. Boyd ("Boyd) filed for chapter 7 on May 24, 2011. The Law Office of Stephen W. Boyd & Associates, PLLC ("the Law Firm") is entirely owned and operated by Boyd, but has not filed for bankruptcy protection.

Much of this case revolves around the actions Boyd allegedly took to divert funds from Elbee Investments, Inc. ("Elbee") and Leo Block to a variety of Boyd's personal accounts or into companies Boyd owned or operated, such as Medlaw Services LLC and the Law Firm. Worth noting are several transactions which pertain to the relationship between Boyd and the Law Firm. Boyd is accused of authorizing Elbee to extend a two million dollar line of credit to Medlaw, which was then used to finance unrelated cases being handled by the Law Firm. There are also allegations of funneling money directly from Elbee to Medlaw and to the Law firm. The Trustee's complaint also alleged a heavy comingling of funds between Boyd and the Law Firm, with Boyd writing checks from the Law Firm to his ex-wife, to personal bank accounts, to personal bankruptcy lawyers, and and to his current wife, all for apparently personal expenses.

Elbee and Erma Block, acting as the independent executrix for the estate of Leo L. Block ("Block") sued Boyd, and Medlaw Services, LLC, in state court for breach of fiduciary duty, conspiracy, fraud, conversion, disgorgement, and exemplary damages. Eventually, after removal, remands, and a mistrial, a jury returned a verdict against Boyd for fraud, breach of fiduciary duty as an attorney, breach of fiduciary duty as a corporate director, fraud in a real estate or stock transaction, and misapplication of fiduciary property. The verdict resulted in a judgment in excess of 9.4 million dollars in July 2012.

Since April 6, 2009, FDD (the defendant in this case) had leased office space to the Law Firm for $9,500 a month. Boyd had guaranteed this lease obligation. The Law Firm was behind on its rent. On February 3, 2011, just nine days after trial had commenced in state court against Boyd, the Law Firm (acting through Boyd) assigned to FDD an interest in a contingent fee arising from the Law Firm's representation of the plaintiff in *American Medical Associations v. United Health Care* (Cause No. 00-CV-2800 in the United States District Court for the Southern District of Texas.) The assignment was "in an amount equal to the unpaid rent along with late fees and/or interest [that might be due] as of the date the Assignor receives his fee from the settlement proceeds of the case." The Law Firm was, by this assignment, permitted to stay in the office space until the *United Health Care* case concluded.

Following Boyd's bankruptcy, FDD filed a proof of claim for $866,221.28, subsequently reduced following re-letting and mitigation to $456,307.20. Following the settlement of the *American Medical Associations v. United Health Care* lawsuit, the Law Firm was slated to receive $400,772.64 in fees. FDD claimed entitlement to these fees per the aforementioned assignment two months following the bankruptcy filing. On August 10, 2012, the Chapter 7 Trustee filed this adversary proceeding for declaratory relief and to void the assignment as a fraudulent transfer. The Trustee also claimed that the fee should be turned over as property of the Boyd bankruptcy estate. Concurrently, the Trustee filed a sister adversary proceeding seeking substantive consolidation of the Law Firm (which is not in bankruptcy) with the Boyd estate. The Trustee there argues that the assignment of the contingent fee was part of a larger attempt by Boyd to move money otherwise fraudulently obtained beyond the reach of his creditors. The Trustee also points out that the contingent fee was the Law Firm's last asset, so that the assignment of the fee rendered the Law Firm insolvent.

## II. *Summary of FDD's Motion to Dismiss*

FDD asserts a number of arguments in support of dismissal.

FDD first maintains that the bankruptcy court lacks the judicial authority to hear this dispute, such that the action against FDD should be dismissed under Rule 12(b)(1) (lack of jurisdiction). FDD argues that the claims asserted are non-core under 28 U.S.C. § 157(b)(3) and that the Supreme Court's decision in *Stern v. Marshall* limits this court's authority to hear such claims, as they "concern FDD's rights and related obligations owned by the non-debtor Law Firm, and assets of the non-debtor Law Firm, not part of the Boyd bankruptcy estate." This argument appears to be an assertion that the court lacks subject matter jurisdiction to hear the dispute, in addition to lacking the judicial power to adjudicate the dispute.

Second, FDD argues the case should be dismissed for lack of standing because the contingent fee was the sole property of the Law Firm (not Boyd or the bankruptcy estate), and as a non-debtor, it was free to assign its property to anyone without concern regarding potential liability to creditors of *Boyd*. Even if Boyd's creditors *would* have standing to bring the action against the Law Firm and its assignee, FDD, that way should be barred because those creditors have already received a final judgment and they failed to alleged a fraudulent transfer claim in their state court proceedings. Further, because the Trustee previously acquiesced to the bankruptcy court's lift of stay to allow the commencement of the state court trial, the Trustee's standing should be held to be foreclosed.

Third, FDD asserts the Trustee's claims must be dismissed for failure to state a claim upon which relief may be granted because the assignment occurred on February 3, 2011, more than 90 days outside of Boyd's Chapter 7 filing date, May 24, 2011 (*i.e.*, outside the preference lookback period). Further, the

3

assignment transferred only nominal "value" as of the date of the transfer, because no one could know of a certainty that the underlying contingent fee would actually be worth anything at that point. The value that the fee had when the lawsuit settled cannot be attributed back in time. Finally, the transfer is not avoidable, says FDD, because it provided new value in the form of future rent and the right of the law firm to occupy premises after the date of the Assignment.

Fourth, FDD maintains the Trustee has an irreconcilable conflict barring the right to assert a claim on behalf of the Boyd estate against FDD, as the Trustee has possession and control over the stock or membership interest in the Law Firm. Thus , it is alleged that the Trustee owes duties and responsibilities to the creditors of the Law Firm that would be violated were the Trustee to continue to pursue its claim to the fee from the settled lawsuit, without satisfying the claims of creditors of the Law Firm first.

Finally, FDD alleges the Trustee's claims are barred under the principle of *in pari delicto*, as the Trustee may not bring a case standing in Boyd's shoes, when Boyd was the initiating facilitator of the alleged wrongful acts and the perpetrator of wrongful conduct as alleged within the Complaint. The Trustee stands in the shoes of the debtor, who would himself be barred by this equitable doctrine were he to initiate this action in his own name outside of bankruptcy.

In the alternative, FDD asserts the Complaint is vague and ambiguous and moves for a more definite statement.

### III.    *Discussion*

1. Rule 12(b)(1) Motion to Dismiss

    a. Subject Matter Jurisdiction

Bankruptcy jurisdiction "is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995); *In re Wilborn*, 609 F.3d 748 (5th Cir. 2010). Federal district courts "have original jurisdiction but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). There are thus three types of bankruptcy jurisdiction: "arising under," "arising in," and "related to" jurisdiction*. See Stern v. Marshall*, 131 S. Ct. 2594, 2620, 180 L.Ed.2d 475 (2011). "Arising under" jurisdiction encompasses claims created by Title 11, such as an avoidance claim under 11 U.S.C. § 544(b). *See, e.g., Carlton v. BAWW, Inc.*, 751 F.2d 781 (5th Cir. 1985). "Arising in" jurisdiction pertains to matters that could only arise in a case under Title 11. *In re Wilborn*, 609 F.3d 748, 752 (5th Cir. 2010). "Related to" jurisdiction exists when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re*

4

*Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)).[1] Section 157(a) of title 28 permits a district court to refer "any and all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges within the district. Section 157(a) distinguishes core and non-core cases, providing that bankruptcy courts may 'hear and determine' core cases, but noting that bankruptcy courts may only submit findings of fact and conclusions of law to the district court in non-core cases. *See* 28 U.S.C. § 157(b), (c).

FDD asserts that the Supreme Court's decision in *Stern v. Marshall* forecloses a bankruptcy court from considering rights and claims of the Law Firm and FDD as an individual creditor of the Law firm, as these rights and claims "are not involved in or relate to the Boyd bankruptcy estate." Defendant's Amended Motion to Dismiss [Docket #6]. *Stern* addresses the constitutionality of 28 U.S.C. § 157(b)(2)(C) insofar as that section could be read to permit a non-Article III tribunal to finally adjudicate a matter that in fact cannot, by its nature, must be finally adjudicated only by an Article III court (unless the parties otherwise consent). *Stern,* 131 S. Ct. 2594 (2011). The majority of cases after *Stern* have held that the Supreme Court did not decide the question as one of subject matter jurisdiction under 1334. *Stern* is not grounds to dismiss for lack of subject matter jurisdiction.[2]

This is not to say, however, that subject matter jurisdiction is present, wholly apart from *Stern*. The Trustee's allegations of alter-ego and reverse veil piercing, as supported by the factual allegations set forth in the pleadings, must still be independently examined to determine whether there is subject matter jurisdiction under section 1334(b). This question in turn requires a closer examination of the nature of the cause of action.

    b.   Alter Ego and Reverse Piercing

An alter ego remedy is available in Texas (and thus in the federal courts when Texas law is the relevant source of law) whenever there is an identity or unity between a corporation and either a natural person or an affiliated entity such that all separateness between the parties has ceased (or never existed) and failure to disregard the corporate form would be unjust. *In re Schimmelpenninck,* 183 F.3d 347, 356 (5th Cir. 1999) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986)). A "reverse-piercing

---

[1] The Supreme Court cites both *Pacor* and *Wood* favorably. *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 6, 115 S. Ct. 1493, 131 L.Ed.2d 403 (1995).

[2] See, e.g., *In Re Fairchild Corp.*, 452 B.R. 525 (Bankr. D. Del. 2011); *In re Olde Prairie Block Owner, LLC*, 457 B.R. 692, 2011 WL 3792406 (Bankr. N.D. Ill. 2011) (Stern addresses the allocation of authority between bankruptcy courts and Article III courts, and "[t]hat allocation does not implicate questions of subject matter jurisdiction."); *In re Citron*, 2011 WL 4711942 (Bankr. E.D.N.Y. Oct. 6, 2011) ("Stern does not deprive a bankruptcy court of subject matter jurisdiction."); *In re Carroll*, 464 B.R. 293 , 309-11(Bankr. N.D. Tex. Dec. 13, 2011) ("Stern does not implicate the grant of subject matter jurisdiction . . . .").

5

action belongs to the [trustee], not to one individual creditor of the Debtor," and is property of the estate. *Id.*, at 366. Traditional veil-piercing uses the alter ego doctrine to break through corporate formalities and include the assets of a shareholder as assets of a corporation. *See* Tex. Bus. Org. Code § 21.223(b) (requiring actual fraud to hold a shareholder liable for the contractual obligations of a corporation); *The Cadle Co. v. Brunswick Homes, LLC ( In re Moore),* 379 B.R. 284, 290 (Bankr. N.D. Tex. 2007) (discussing the traditional use of corporate veil piercing to "mak[e] a *shareholder* liable for a *corporation's* contractual debts"). Reverse veil-piercing, which is a common-law doctrine recognized in Texas, counts the assets of a corporation or other entity as the assets of its shareholder. *In re Moore*, 379 B.R. 284 (noting that reverse veil-piercing "appl[ies] the traditional veil piercing doctrine in reverse, so that a *corporation's* assets are held accountable for the liabilities of *individuals* who treated the corporation as their alter ego") (citing *Zahra Spiritual Trust v. United States,* 910 F.2d 240, 243 (5th Cir. 1990)).

The reverse veil-piercing doctrine applies when the corporate entity is the alter ego of the individual—that is, "when there is such a unity between corporation and individual that the separateness of the corporation has ceased and holding only the individual liable would result in injustice." *Bollore S.A. v. Import Warehouse, Inc.,* 448 F.3d 317, 325 (5th Cir. 2006) (stating the standard for alter-ego liability and noting that the "standard applies equally to reverse-piercing cases such as this one"). To determine whether the alter ego doctrine applies, a court considers the following factors:

> the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes.

*Id.* (citing *Permiam Petroleum Co. v. Petroleos Mexicanos,* 934 F.2d 635, 643 (5th Cir. 1991)).

Alter-ego claims are property of the estate. *In re Moore*, 608 F.3d 253 (5th Cir. 2010) (citing *Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347, 358 (5th Cir. 1999); *In re S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987)). Reverse-piercing actions belong to the trustee, not to one individual creditor of the Debtor. *In re Moore*, 608 F.3d 253 (5th Cir. 2010) (citing *Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347, 358 (5th Cir. 1999)).

That the cause of action belongs to the estate does not resolve whether the federal courts have subject matter jurisdiction to entertain the cause of action, however. The remedy seeks to hold the non-debtor entity to be responsible for the debtor entity's liabilities. If successful, it would allow the Trustee to exercise control over the assets of the non-debtor entity, and to administer those assets for distribution

to creditors of the bankruptcy estate. *See In re Bass*, 2011 WL 722384, at *6 (Bankr. W.D. Tex. 2011). The alter-ego claim of the Trustee asserts that Boyd and Law Firm were essentially a single entity acting under the Debtor's control. As set forth in the pleadings, "all of the money flowing into the Boyd Law Firm was fraudulently obtained by Boyd." Boyd is accused of essentially laundering funds he received improperly through the Law Firm to pay off the Law Firm's debts, pay employees, develop the Law Firm's software, and finance the Law Firm's cases. Boyd is accused of using the Law Firm's bank accounts and IOLTA accounts to pay personal bills and to write himself checks. When the Law Firm entered into the lease with FDD, Boyd provided an individual personal guaranty. During this entire time, Boyd remained the sole shareholder of the Law Firm. Taking the facts set forth in the Trustee's pleadings as true, the action would at least conceivably affect the administration of the estate. *In re Woodward East Project, Inc.*, 54 F.3d 778 (6th Cir. 1995) (*citing In re Crabtree,* 39 B.R. 718, 723 (Bankr. E.D. Tenn. 1984)). The court is satisfied that the outcome of this alter-ego and reverse piercing proceeding "could conceivably have [an] effect on the estate being administered in bankruptcy," and thus falls within the court's "related to" jurisdiction under section 1334(b).

*Western Oil & Gas JV, Inc. v. Castlerock Oil Co., Inc.*, 91 F. App'x 901 (5th Cir. 2003) is not to the contrar. In *Western Oil & Gas*, the court merely held the evidence was insufficient to establish alter ego identities, to pierce the corporate veil, or establish a claim of fraudulent transfer. The question before the court is not whether the plaintiff *wins* based solely on what is alleged in the complaint (that takes a trial to decide), but whether the allegation as pleaded can be tried in the federal courts under the bankruptcy jurisdiction provision. The court in *Western Oil* ruled that the evidence there was insufficient on the merits to support a recovery under alter ego. *Id*. It did not rule that alter ego cannot be a basis for recovery.

The court is not satisfied, however, that the alter ego action is core. A generous reading of section 157(b)(2)(A) ("matters concerning the administration of the estate") would sweep all related to matters under the core umbrella. Congress had no such intention, of course. It is a safer course, in this court's view, to simply ask the "core" questions – is this a matter that arises under title 11, or is this matter one which arose during the case? Phrased this way, the question nearly yields its own answer. The alter ego action is neither. Thus, it is at best "related to" the bankruptcy case.

    c.  <u>Fraudulent Transfer</u>

The Trustee asserts fraudulent transfer and avoidance claims under 11 U.S.C. §§ 544 and 548. These claims depend on whether the Trustee can pierce the veil between the Law Firm and the debtor. If so, then the Trustee next seeks to unwind the assignment as a fraudulent transfer. These are matters over which the court clearly has subject matter jurisdiction, and are deemed core matters under section 157(b).

That they depend for their assertion on the Trustee's first prevailing on his alter ego action does not affect whether the court has the subject matter jurisdiction to entertain the action. The court clearly does, as the matters arise under title 11. *See* 11 U.S.C. §§ 548, 544(b).

   **2.** Standing

FDD asserts three arguments on why the Trustee lacks standing. First, FDD maintains that the assignment does not involve property of the estate. However, if the Trustee's alter-ego claims are established, the use of the Law Firm to perpetuate a fraud or fraudulently transfer assets will provide the Trustee a claim for the benefit of the bankruptcy estate, because, claims of alter-ego and avoidance are property of the estate. Section 544(b) allows a Trustee

> to succeed to the actual, allowable and unsecured claims of the estate's creditors. If an actual, unsecured creditor can, on the date of the bankruptcy, reach property that the debtor has transferred to a third party, the trustee may use § 544(b) to step into the shoes of that creditor and "avoid" the debtor's transfer. Although the cause of action belonged to one creditor, any property the trustee recovers becomes estate property and is divided *pro rata* among all general creditors. The trustee may recover the full extent of the fraudulently transferred property on the basis of one creditor's claim. In other words, an entire transfer may be set aside even though the creditor's claim is nominal.

The Trustee may stand in the shoes of any creditor to avoid a transfer of property from Boyd, or his alleged alter ego of the Law Firm, in order to recover property that will be divided among all general creditors. This argument fails.

Second, FDD argues that because the state court action between Elbee and Boyd ended in final judgment, and the Bankruptcy Court abstained from consideration of that dispute, and because the Trustee acquiesced in the pursuit of the state court claims by Elbee, the Trustee's claim is now foreclosed under *res judicata*. Relying on *Wells Fargo Bank of Texas, N.A.v. Sommers (In re Amco)*, 444 F.3d 690 (5th Cir. 2006), FDD argues that, because the Trustee consented to Elbee's state court claims, the Trustee is not allowed to now ignore the Abstention Order by pursuing actions that Elbee could have and should have brought in state court. This misconstrues *Amco*. The Trustee in *Amco* expressly consented to the creditor's pursuit of an alter ego action in state court. The Trustee then later brought a suit for substantive consolidation in the bankruptcy court, in direct contravention of its earlier consent – and even sought to unwind the resolution the creditor obtained in state court. Here, by contrast, the abstention order did not address an action against the Law Firm by Elbee, nor did the state court ever enter a remedy in favor of Elbee that would now be inconsistent with the relief sought here by the Trustee. To make *Amco* on point, it would have to *Elbee* claiming *res judicata*, not FDD. *See id.,* at 696.

Third, FDD maintains the Trustee has not asserted claims on behalf of Boyd. This assertion simply fails on the basis of the Trustee's alter-ego and reverse piercing assertions, as discussed previously.

**3.** Standards for Rule 12(b)(6) Motion to Dismiss

The Supreme Court has said that Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted). When such a complaint is attacked under Rule 12(b)(6), the plaintiff is obligated, with regard to the grounds upon which the complaint rests, to furnish more than labels and conclusions. "[A] formulaic recitation of the elements of the cause of action will not do[.]" *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (stating that conclusory factual allegations, formulaic or threadbare recitations of the elements of a claim, and bare legal conclusions are not presumed to be true). "Factual allegations must be enough to raise a right to relief above the speculative level," and must do more than simply create a "suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, FED. PRAC. AND PROC. § 1216, pp. 235-236 (3d ed. 2004)). Nonetheless, in reviewing a 12(b)(6) motion, the court must accept all well-pleaded facts as true. *Broyles v. State ex. rel. Abbott*, 2010 U.S. App. LEXIS 12151, at *5 (5th Cir. 2010).

a. Avoidance Action

Section 547(b) of the Bankruptcy Code provides that, except in limited circumstances, the trustee of a bankruptcy estate "may avoid any transfer of an interest of the debtor in property" that is made "on or within 90 days before the date of the filing of the petition." The question whether a "transfer" has occurred and is complete is a matter of federal law. *Barnhill v. Johnson,* 503 U.S. 393, 397, 112 S. Ct. 1386, 1389, 118 L.Ed.2d 39 (1992). Section 547(e)(1)(B) specifies that a transfer of an interest in property other than real property is perfected or complete for purposes of preference avoidance "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee."

When a debtor makes an absolute assignment to a creditor, of money that the debtor is entitled to receive from a third party, a transfer is perfected and complete when the assignment is executed rather than when the money is disbursed to the creditor. *See Goldstein v. Madison Nat'l Bank,* 807 F.2d 1070, 1074 (D.C. Cir.1986). In *Gamble v. Mathias,* the debtor, who sustained a loss by fire, assigned his right under his insurance policy to his creditor by written indorsement on the back of the policies. 61 F.2d 911 (5th Cir. 1931). The assignment took place outside the preference period. *Id.* Then, within the preference period, three checks were received from the insurance companies and delivered to the creditor. *Id.* The trustee brought a claim against the creditor, seeking to recover the sum collected under the assignment

9

made by the debtor. *Id.* The trustee argued that the transfer of the insurance policies was not completed until the money was paid under the policies. *Id.* The Fifth Circuit disagreed with the trustee. *Id.* The Fifth Circuit opined that a present assignment of an interest passes the title to it as of the date of the assignment and that moneys collected under it are not of the bankruptcy estate, but of the assignee. *Id.*

*Gamble* was reinforced in *In re Gibraltar Resources, Inc.*, where the court ruled that in calculating the preference period, "a transfer occurs on the date the contractual right to payment is assigned, not on the date payment is actually made or collected." *In re Gibraltar Resources, Inc.*, 202 B.R. 586, 587 (N.D. Tex. 1996) (quoting *In re Adventist Living Ctrs.,* 174 B.R. 505, 512 (Bankr.N.D.Ill.1994)). *Gibraltar* specifically stated that "when a debtor makes an absolute assignment to a creditor, of money that the debtor is entitled to receive from a third party, a transfer is perfected and complete when the assignment is executed rather than when the money is disbursed to the creditor." *Id.* at 588.

The assignment in question here was made by the Law Firm to FDD on February 3, 2011. Boyd declared bankruptcy on May 24, 2011. Even though the payment of the assignment occurred in the summer after the filing, the transfer is perfected and complete when the assignment was executed on February 3, 2011. As a result, the transfer took place 110 days prior to the bankruptcy filing and would fall outside the 90 day preference window. This is not the end of the discussion, however. A transfer made to or for the benefit of an insider can be avoided if it occurs within one year of the filing. Here, the transfer to FDD, was "for the benefit of" the Law Firm. Elegant though the argument appears on first blush, it too fails because we find a transfer of property of the debtor (another element of preference) only by first ignoring the corporate veil. In so doing, we eliminate the separateness of the Law Firm from Boyd. We could not reach such a conclusion, then pretend that we had not done so for purposes of having a "separate entity" to qualify as an insider in order to enjoy the one year look back. Thus, the court grants the motion to dismiss the Trustee's cause of action for recovery of a preference under section 547.

However, the complaint also alleged actual fraudulent transfer and constructive fraudulent transfer under the Texas Uniform Fraudulent Transfer Act ("TUFTA"). As a result, section 548(a)(1) of the Bankruptcy Code provides for the avoidance of "any transfer…of any interest of the debtor in property, or any obligation…incurred by the debtor, that was made or incurred…within **two years** before the date of the filing" of the bankruptcy petition, if the transfer was made with "actual intent to hinder, delay, or defraud" or if the debtor if the debtor "received less than reasonably equivalent value in exchange for" the transfer or obligation, and the debtor (1) "was insolvent on the date such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;" (2) "was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;" or (3) "intended to incur, or

believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured." 11 U.S.C. § 548(a)(1)(A) & (B)(emphasis added). Thus, if the allegations of fraudulent transfer contained within the Trustee's complaint rise above the speculative level and do more than simply create a "suspicion of legally cognizable right of action," the motion to dismiss must be denied as to the Trustee's section 548 and 544(b) causes of action.

### i. *Actual Fraud*

In order to prevail on fraudulent conveyance claims under TUFTA, the Trustee must prove the debtor made the transfers in question "with actual intent to hinder, delay or defraud any creditor" of the Debtor, Tex. Bus. & Com. Code Ann. § 24.005(a)(1), and "[i]ntent to hinder, delay or defraud may be established by circumstantial evidence." *In re SMTC Mfg. Of Texas*, 421 B.R. 251, 298 (W.D. Tex. 2009) (citing *Sherman v. FSC Realty, LLC (In re Brentwood Lexford Partners, LLC)*, 292 B.R. 255, 262–63 (Bankr.N.D.Tex.2003)); *see also In re Reed,* 700 F.2d 986, 991 (5th Cir.1983). Circumstantial evidence of actual fraudulent intent under TUFTA, "commonly known as 'badges of fraud' " are codified in a non-exclusive list set forth in § 24.005(b) of TUFTA. *In re Soza,* 542 F.3d 1060, 1066 (5th Cir.2008).[3] Proof of four to five badges of fraud is sufficient to establish actual fraud. *See Ingalls v. SMTC Corp. (In re SMTC MFg. of Tex.)*, 421 B.R. 251, 299-300 (Bankr. W.D. Tex. 2009) (citing Texas fraudulent transfer cases).[4] It is important to note that section 24.005(a)(1) requires only a finding of fraudulent intent on the

---

[3] § 24.005(b) of TUFTA provides the factors to be considered, among others, include whether:
   (1) the transfer or obligation was to an insider;
   (2) the debtor retained possession or control of the property transferred after the transfer;
   (3) the transfer or obligation was concealed;
   (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
   (5) the transfer was of substantially all the debtor's assets;
   (6) the debtor absconded;
   (7) the debtor removed or concealed assets;
   (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
   (9) the debtor was insolvent or became insolvent shortly after a substantial debt was incurred;
   (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
   (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

[4] Alternatively, as a matter of law, a finding of fraudulent intent *cannot* properly be inferred from the existence of just one "badge of fraud." *Diamant v. Sheldon L. Pollack Corp.,* 216 B.R. 589 (Bankr.S.D.Tex.1995) ("[O]ne badge of fraud standing alone may amount to little more than a suspicious circumstance, insufficient in itself to constitute fraud per se") (quoting *U.S. v. Fernon,* 640 F.2d 609, 613 (5th Cir.1981)); *Walker v. Anderson,* 232 S.W.3d 899 at 914 ("An individual badge of fraud is not

part of the debtor. In other words, the inquiry for determining actual fraud centers on the debtor's intent in making the transfer, not the recipient's *scienter*. *See SEC, et al. v. Resource Development Int'l LLC, et al.,* 487 F.3d 295, 301 (5th Cir. 2007). The intentions or motives of the transferee are irrelevant. *Id*. (*Citing Warfield v. Byron,* 436 F.3d 551, 559 (5th Cir.2006) ("the transferees' knowing participation is irrelevant under the statute" for purposes of establishing the premise of (as opposed to liability for) a fraudulent transfer.")).

The Trustee's complaint alleges the following facts, among others: Boyd and FDD concealed the assignment until two months <u>after</u> Boyd filed for bankruptcy, Boyd had been sued by Elbee only nine days before the assignment took place, the assignment allowed Boyd to further remove and conceal other assets, the assignment conveyed all of Boyd's and the Law Firm's sole remaining asset, and as a result, Boyd and the Law Firm was or became insolvent shortly after the assignment. Since the court must accept all well-pleaded facts as true when considering a 12(b)(6) motion, the court finds that these alleged facts are sufficient as badges to support a claim of actual fraud. Thus, the Motion for dismissal under 12(b)(6) is denied as to the Trustee's action for actual fraud.

### ii. *Constructive Fraud*

In order to prevail on constructive fraudulent claim under section 24.006(a) of TUFTA,

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Tex. Bus. & Com. Code, § 24.006(a). To maintain an action under section 24.006 of the TUFTA, as opposed to section 24.005(a), "a creditor's claim must have arisen before the transfer in question was made." The fraudulent actions alleged in this case occurred well before the assignment.

Reasonably equivalent value means that "the debtor has received value that is substantially comparable to the worth of the transferred property." *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 548, 114 S. Ct. 1757, 128 L.Ed.2d 556 (1994) (interpreting the same term in the Bankruptcy Code). Per the facts set forth in the complaint, FDD had leased office space to the law firm for $9500.00 a month. Additionally, there were over $200,000.00 of leasehold improvements made and paid for by FDD. FDD filed a Proof of Claim asserting $886,221.28 for unpaid rent and associated late fees and/or interest. Following reletting and damage mitigation, FDD reduced its claim to $456,307.20. The Law Firm is said

---

conclusive."); *Roland v. U.S.,* 838 F.2d 1400, 1403 (5th Cir.1988) (holding that an inference of fraud is proper only when several indicia are found).

to have made the assignment in order to convey an interest in an amount equal to the unpaid rent and associated late fees, in addition to inducing FDD to allow it to stay in the office space until July (when the Law Firm received the judgment and concluded its law office duties). The value of the assignment, if valued as of the date of the settlement, was in all events no greater than the amount needed to repay FDD. By definition, that is reasonably equivalent value.

FDD has raised the issue that the assignment contains only a nominal value, as an attorney's contingent fee changes from an executor contract to an equitable interest upon the performance of the engagement by the recovery of a judgment. *E.g., Missouri Pacific Railroad, Co. v. Austin*, 292 F.2d 415, 419 (5th Cir. 1961) (citing *Northern Texas Traction Co. v. Clark & Sweeton*, 272 S.W. 564 (Tex. Civ. App. 1925). But the question of reasonably equivalent value focuses on whether what came back to the debtor was worth at least as much as the interest transferred. If the interest transferred was nearly worthless, then nearly anything in return – including walking away from its unpaid rent – would be reasonably equivalent value. Assuming that the proof of claim is merely prophylactic, to be considered as a claim only in the event that the assignment is voided, the transfer here satisfied reasonable equivalence.

To note, the second prong of a constructive fraudulent transfer claim requires that the Plaintiff establish the debtor's insolvency at the time of the transfer. *Tow v. Pajooh (In re CRCGP LLC),* 2008 WL 4107490, at *9–10 (Bankr. S.D. Tex. Aug. 28, 2008). As mentioned previously, the complaint alleges the assignment conveyed all of Boyd's and the Law Firm's sole remaining asset, and as a result, Boyd and the Law Firm was or became insolvent shortly after the assignment, fulfilling the second prong.

**4.** Irreconcilable Conflict

FDD asserts that the Trustee has an irreconcilable conflict as it is in sole possession of the stock and controlling interest of the law firm, and thus owes a duty to the creditors and parties-in-interest of the law firm, and thus should not act to "dilute the Law Firm assets through consolidation." FDD fails to cite any authority on the matter and while the court fails to find any directly to support this point, it *is* Texas law that when a corporation is insolvent, a fiduciary relationship arises between the officers and directors of the corporation and its creditors, and creditors may challenge a breach of the duty. *See Martin v. Kagan ( In re Tufts Elecs., Inc.),* 746 F.2d 915, 917 (1st Cir.1984); *Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.,* 779 S.W.2d 474, 477 (Tex.App.-El Paso 1989, writ denied).

Officers and directors of an insolvent corporation do indeed have a fiduciary duty to deal fairly with the corporation's creditors, and that duty includes preserving the value of the corporate assets to pay corporate debts without preferring one creditor over another or preferring themselves to the injury of other creditors. *Plas-Tex, Inc. v. Jones*, 2000 WL 632677 at *4 (Tex. App.—Austin May 18, 2000); *see also Herf & Frerichs Chemical Co. v. Brewster*, 117 S.W. 880 (Tex. Civ. App. 1909) ("The title of the

13

property of the insolvent corporation is vested in the receiver, or the trustee in bankruptcy, in trust for the benefit of the creditors…"). However, the Trustee is neither an officer nor a director. The Trustee is a shareholder. The duty imposed by the statute does not extend to shareholders.

### 5. *In Pari Delicto*

The doctrine of *in pari delicto* provides that wrongdoers ought to bear the consequences of their wrongdoing without legal recourse against each other. The doctrine embodies "the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct, and is undergirded by the concerns, first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 965 (5th Cir. 2012); (citing *Rogers v. McDorman,* 521 F.3d 381, 385 (5th Cir. 2008)). When a debtor files for bankruptcy, "a bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted. *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards,* 437 F.3d 1145, 1150 (11th Cir. 2006). Under the plain meaning of section 541(a), the debtor estate includes all "legal or equitable interests *of the debtor* as of the commencement of the case." 11 U.S.C. § 541(a) (emphasis added (citing *O'Halloran v. First Union Nat. Bank of Florida*, 350 F.3d 1197, 1202 (11th Cir. 2003)). However, this case does not present a dispute between mutual wrongdoers such as Boyd/the Law Firm and FDD. Instead it involves the avoidance of a transfer from Boyd/the Law Firm to FDD, and in this case, while asserting alter-ego and reverse veil piercing, the Trustee stands in the shoes of unsecured creditors, not Boyd. *See Schimmelpennick, supra.* Thus, *in pari delicto* does not apply. Even if it did, it would be inequitable to apply the wrongdoer label to a Trustee who by law is appointed for the benefit of creditors. The Trustee realizes no personal advantage from the cause of action, other than the statutory advantage of a larger fee as the result of augmenting the estate for the benefit of creditors. Equitable doctrines become perverse doctrines when applied inequitably. Applying the *in pari delicto* doctrine to these facts would not be equitable – it would be perverse.

### IV. *Conclusion*

For the reasons stated above, the court Grants the Motion to Dismiss as to the preference actions, and denies the motion on all other grounds asserted.

####